UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS W. QUIRK, et al.,
                         Plaintiffs,

                -v-

HONORABLE JANET DIFIORE, et al.,
                         Defendants.

20-CV-5027 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Dennis W. Quirk, individually and on behalf of the New York State Court Officers Association, has filed a motion for a temporary restraining order and preliminary injunction, seeking to enjoin the enforcement of COVID-19 screening procedures related to the reopening of New York's state courts. For the reasons that follow, the motion is denied.

**I.    Background**

Unless otherwise noted, the following facts are undisputed.

Plaintiff Dennis W. Quirk is a court officer and the president of the New York State Court Officers Association, a labor union that represents some 1,500 court officers. (Dkt. No. 2 ("Compl.") ¶¶ 3-4.) Janet DiFiore is the chief judge of New York State, and the New York State Office of Court Administration is the branch of the state court system responsible for enforcing court rules and regulations (Compl. ¶¶ 7-8.)

On March 13, as the scale of the COVID-19 outbreak in New York was becoming clear, DiFiore and Chief Administrative Judge Lawrence K. Marks announced a slew of new procedures to reduce courthouse traffic, including postponing new civil and criminal jury trials, suspending jury selection, encouraging judges to minimize courthouse appearances, and directing court personnel to conduct meetings remotely. (*See* Dkt. No. 24-3.) Two days later, a

new memo declared that "all non-essential functions of the courts" would be postponed until further notice. (Dkt. No. 24-4 at 2.)

New York state courts remained largely closed for the next few months. By mid-May, however, as the state began to reopen, the Office of Court Administration started issuing safety guidelines in light of "the anticipated expansion of courthouse operations in coming days and weeks." (Dkt. No. 24-6 at 2.) Among the new rules, judges and nonjudicial personnel were directed to wear face masks, observe social distancing, and wash their hands regularly. (*See* Dkt. No. 24-7.) In addition, as part of new screening procedures unveiled on June 30, court visitors would "be required to submit to temperature screening and questioning upon entry." (Dkt. No. 24-9 at 2.) A court officer would take the visitor's temperature by infrared thermometer, "without physical contact to the visitor," and then ask a series of questions meant to determine whether the visitor was likely to be infected. (*Id.*) If the visitor's temperature equaled or exceeded 100 degrees Fahrenheit, or if her answers suggested a possible infection, she would be instructed "to leave the court facility immediately." (Dkt. No. 24-9 at 3.)

On July 14, Quirk filed a motion for a temporary restraining order and preliminary injunction, seeking to restrain Defendants from implementing and enforcing the June 30 order. (*See* Dkt. No. 16.) In the motion, Quirk alleges that court officers are "not trained to medically assess individuals for COVID-19," that "Defendants are not providing court officers with proper PPE," and that the June 30 order "fails to protect Plaintiffs and other persons within courthouses." (*See* Dkt. No. 16 at 3-6.) In response, Defendants argue that the Court should abstain from exercising jurisdiction over state court procedures, that Quirk's claims are meritless, and that the state court's screening procedures are in the public interest. (*See* Dkt. No. 23.) Briefing on the motion was completed in September.

2

## II.     Legal Standard

In the Second Circuit, the standards for a temporary restraining order and a preliminary injunction are the same. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). In both cases, the petitioner must show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Id.* (quoting *MyWebGrocer, L.L.C. v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)). Where, as here, the moving party seeks an injunction "that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000) (internal quotation marks and citation omitted).

## III.    Discussion

The Court first addresses the "threshold question" of abstention. *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (internal quotation marks and citation omitted). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Given the "virtually unflagging obligation" of federal courts to hear the cases properly before them, "the balance is heavily weighted in favor of the exercise of jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation marks and citations omitted). In the narrow circumstances in which it is applicable, however, "abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (internal citation omitted).

3

Under the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971), federal courts may not intrude into "ongoing state criminal prosecutions," "certain civil enforcement proceedings," or "pending civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (internal quotation marks and citations omitted). Underlying *Younger* abstention is the principle of comity: a recognition that the federal government, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44.

The Court extended *Younger* abstention in *O'Shea v. Littleton*, 414 U.S. 488 (1974), which involved an attempt to enjoin state court judges from "carrying out allegedly unconstitutional policies and practices relating to bond setting, sentencing, and jury fees in criminal cases." *Disability Rts New York v. New York*, 916 F.3d 129, 134 (2d Cir. 2019). Although *Younger* was concerned with ongoing state proceedings, the Court in *O'Shea* went further, holding that principles of comity prevented federal courts from issuing "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *O'Shea*, 414 U.S. at 500. Such relief would require "nothing less than an ongoing federal audit of state criminal proceedings," exactly "the kind of interference that *Younger v. Harris* … sought to prevent." *Id.* "Like *Younger*, *O'Shea* has also been applied in certain civil contexts involving the operations of state courts." *Disability Rts.*, 916 F.3d at 134 (citing *O'Shea* in abstaining from altering the process for appointing legal guardians in New York); *see also Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006) (citing *O'Shea* in abstaining from enjoining state court procedures for assigning cases to certain judges).

Defendants argue that the Court should abstain from adjudicating the merits of Quirk's claims in light of *O'Shea*, and the Court agrees.[1]  (*See* Dkt. No. 23 at 16-18.)  Whether *O'Shea* applies in any given case is "heavily fact-dependent."  *Bronx Defs. v. Office of Ct Admin.*, No. 20-CV-5420, 2020 WL 4340967, at *5 (S.D.N.Y. July 28, 2020) (internal quotation marks and citation omitted).  Its application depends on "the relief sought — i.e., the degree of intrusion into the state courts' domain — and the strength of the state interest at stake."  *Id.*  The more substantial the invasion, and the stronger the interest, "the more likely the requested relief would violate the principles of comity set forth in *Younger* and *O'Shea*."  *Id.*

Here, the intrusion would be substantial.  Quirk seeks an injunction to prevent Defendants from enforcing the June 30 order laying out the COVID-19 screening procedures for courthouse entry.  (*See* Dkt. No. 16 at 1, 7.)  In practice, if New York state courts are not allowed to mandate screening procedures for entry, the likely effect of the requested relief would be to halt the reopening altogether.  But this Court cannot dictate "if, when, and how" state courts reopen.  *Bronx Defs.*, 2020 WL 4340967, at *1.  "To do so would violate fundamental principles of comity and federalism, and would result in federal supervision of state procedures and proceedings in direct contradiction of *O'Shea v. Littleton*."  *Id.*

Another court in this District recently applied *O'Shea* in a particularly instructive case.  In *Bronx Defenders v. Office of Court Administration*, a number of public defender organizations brought suit to halt in-person appearances in New York City Criminal Court, alleging that the plan to reopen the court amid the COVID-19 pandemic did not adequately accommodate people

---

[1] Defendants also argue that the Court should abstain under *Younger* and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  (*See* Dkt. No. 23 at 14-16.)  However, since abstention under *O'Shea* is sufficient for the Court to decline jurisdiction, it is unnecessary to address *Younger* or *Burford* here.

with protected disabilities.  *Id.*  In addition to halting in-person appearances, the plaintiffs also sought an order requiring the state court to create and implement a new policy that would "mandate specific accommodations — e.g., video and telephone hearings."  *Id.* at *5.  The court held that "an order dictating if, when, and how state court judges can schedule conferences would violate principles of comity."  *Id.*  To grant the relief sought, the court would also "have to monitor and supervise the implementation of a new policy for in-person court appearances," precisely the kind of ongoing audit *O'Shea* seeks to avoid.  *Id.*

The instant case is analogous.  Mandating the terms of reopening would have the effect of dictating if, how, and when state court judges can conduct their proceedings.  Quirk claims that he does not seek to prevent state courts from reopening altogether.  (*See* Dkt. No. 27 at 7.)  Instead, he seeks to halt the reopening temporarily until the courts agree to implement various safety measures, including "the issuance of adequate and plentiful PPE, constant sterilization of court facilities, Plexiglass barriers between parties, seating capacity restrictions, daily case number limitations and the wearing of facial coverings." (Dkt. No. 16 at 5).  Leaving aside the merits of these proposals — as well as the factual dispute as to whether and to what extent the state courts have already adopted such measures — it is clear that enforcement would require federal supervision and oversight at dozens of courts across the state.  Such oversight "would be so intrusive in the administration of the New York court system that [the Court] must, based on applicable precedent, abstain."  *Kaufman*, 466 F.3d at 86.

In addition, the state has a strong interest both in crafting its response to the COVID-19 pandemic as well as in restarting the state court system. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (noting the state's "substantial interest" in vindicating "important state policies" and in "the functioning of the state judicial system"); *see*

6

Case 1:20-cv-05027-JPO   Document 56   Filed 12/10/20   Page 7 of 7

*also Bronx Defs.*, 2020 WL 4340967, at *6 (noting the state's strong interest in conducting in-person proceedings, as virtual proceedings have "severely frustrated, if not wholly disrupted, some critical criminal justice functions regarding … non-custodial defendants") (internal quotation marks and citation omitted). The state's interest is especially strong where, as here, it requires flexibility to address a rapidly evolving public health situation on the ground.

Given the strong state interests at stake, as well as the intrusive nature of the requested relief, the Court finds abstention proper under *O'Shea*. Abstention is also "supported by the 'availability of other avenues of relief.'" *Disability Rts*, 916 F.3d at 137 (quoting *O'Shea*, 414 U.S. at 504); *see also Allen v. McCurry*, 449 U.S. 90, 105 (1980) (affirming "the constitutional obligation of the state courts to uphold federal law" and expressing "confidence in their ability to do so"). In light of the decision to abstain, the Court need not evaluate the parties' arguments on the merits.

**IV.   Conclusion**

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and preliminary injunction is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 16.

SO ORDERED.

Dated: December 10, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge