UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DENNIS W. QUIRK, as president of and on behalf of the
New York State Court Officers Association,

                Plaintiff,

      -against-                        Case No. 20 Civ. 5027 (JPO)

HONORABLE JANET DIFIORE, Chief Judge of the
State of New York, NEW YORK STATE OFFICE OF
COURT ADMINISTRATION, and JOHN DOE 1-5,

                Defendants.
-------------------------------------------------------------------X

## CHIEF JUDGE DIFIORE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
(212) 416-6556
Attorney for Chief Judge DiFiore

James M. Thompson
Assistant Attorney General
Of Counsel

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

   I.    PLAINTIFF STILL FAILS TO ALLEGE PERSONAL INVOLVEMENT BY
        CHIEF JUDGE DIFIORE ............................................................................................. 2

   II.   PLAINTIFF'S COVID-RELATED CLAIMS FAIL ........................................................ 3

       A.   Plaintiff Still Cannot Provide a Legal Basis for His Claim of "Imminent and
           Substantial Endangerment" .................................................................................. 3

       B.   Plaintiff Does Not Dispute Dismissal of His OSHA Claim ...................................... 5

       C.   Plaintiff's Public Nuisance Claim Fails for Lack of Direct Involvement or
           Special Injury ..................................................................................................... 5

   III.  PLAINTIFF'S EMPLOYMENT-LAW CLAIMS ARE LEGALLY INSUFFICIENT .. 6

       A.   Plaintiff's First Amendment Retaliation Claim Fails ................................................ 6

           1.   The Speech at Issue Was Not Protected Because Plaintiff Admits It Was
               Made as Part of His Job Duties ........................................................................ 6

           2.   Plaintiff Did Not Allege Adverse Action By Chief Judge DiFiore, and His
               New Documents Do Nothing to Salvage the Claim ........................................... 8

           3.   Plaintiff Has Not Alleged (And Cannot Allege) Any Injury ............................ 11

       B.   Plaintiff Fails to Allege a § 1983 Conspiracy ......................................................... 12

       C.   Plaintiff Concedes His Labor Law § 740 Claim Is Legally Barred ......................... 13

   IV.  THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION .................. 14

   V.   CHIEF JUDGE DIFIORE IS PROTECTED BY QUALIFIED IMMUNITY .............. 14

   VI.  LEAVE TO AMEND SHOULD BE DENIED ............................................................ 16

CONCLUSION .................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc., 96 N.Y.2d 280 (2001) ........... 6

A.F. ex rel. Fenton v. Kings Park Cent. Sch. Dist., 341 F. Supp. 3d 188 (E.D.N.Y. 2018)... 11, 12

Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 233 F.R.D. 327
    (S.D.N.Y. 2005) ................................................................................................................ 17

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ...................................................................................... 2, 6

Bacon v. Phelps, 961 F.3d 533 (2d Cir. 2020) ............................................................................. 14

Brennan v. Legal Aid Soc'y, No. 19 Civ. 7756, 2020 WL 6875059 (S.D.N.Y. Nov. 23, 2020) . 11

Brown v. Griffin, No. 18 Civ. 5439, 2019 WL 4688641 (S.D.N.Y. Sept. 25, 2019) ..................... 2

Capak v. Epps, No. 18 Civ. 4325, 2020 WL 2543092 (S.D.N.Y. Apr. 7, 2020).......................... 17

Chidume v. Greenburgh-N. Castle Union Free Sch. Dist., No. 18 Civ. 1790,
    2020 WL 2131771 (S.D.N.Y. May 4, 2020) ...................................................... 15, 16

Ellis v. Tribune Television Co., 443 F.3d 71 (2d Cir. 2006) ........................................................... 5

Gallop v. Cheney, 642 F.3d 364 (2d Cir. 2011) .......................................................................... 13

Gonzalez v. City of Schenectady, 728 F.3d 149 (2d Cir. 2013) .................................................... 14

Greer v. Mehiel, 805 F. App'x 25 (2d Cir. 2020) .......................................................................... 9

Hopkins Hawley LLC v. Cuomo, No. 20 Civ. 10932, 2021 WL 465437
    (S.D.N.Y. Feb. 9, 2021) .................................................................................................... 12

Huth v. Haslun, 598 F.3d 70 (2d Cir. 2010) ................................................................................ 10

In re Michael Stapleton Associates Ltd., No. 17 Civ. 5468, 2018 WL 3962931
    (S.D.N.Y. Aug. 17, 2018) .................................................................................................. 17

Jackson v. Abernathy, 960 F.3d 94 (2d Cir. 2020) ....................................................................... 17

Jeanty v. Newburgh Beacon Bus Corp., No. 17 Civ. 9175, 2018 WL 6047832
    (S.D.N.Y. Nov. 19, 2018) .................................................................................................. 11

Lombardo v. Dr. Seuss Enterprises, L.P., No. 16 Civ. 9974, 2017 WL 1378413
    (S.D.N.Y. Apr. 7, 2017)....................................................................................................... 4

Lucente v. IBM Corp., 310 F.3d 243 (2d Cir. 2002) ....................................................... 4

Masciotta v. Clarkstown Cent. Sch. Dist., No. 14 Civ. 7128, 2016 WL 4449660
    (S.D.N.Y. Aug. 23, 2016) ........................................................................................... 4

McHerron v. Burnt Hills – Ballston Lake Cent. Sch. Dist., 778 F. App'x 54 (2d Cir. 2019) ...... 10

Montero v. City of Yonkers, 890 F.3d 386 (2d Cir. 2018) ................................................. 7, 8, 15

Muhammad v. Juicy Couture/Liz Claiborne, Inc., No. 09 Civ. 8978, 2010 WL 4032735
    (S.D.N.Y. July 30, 2010) ........................................................................................... 10

Nollah v. New York City, No. 17 Civ. 634, 2018 WL 4636847 (S.D.N.Y. Sept. 27, 2018) ....... 13

Official Cmte. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,
    322 F.3d 147 (2d Cir. 2003) ...................................................................................... 7

Ortiz v. Ledbetter, No. 19 Civ. 2493, 2020 WL 2614771 (S.D.N.Y. May 22, 2020) ................. 13

Palmer v. Amazon.com, Inc., No. 20 Civ. 2468, 2020 WL 6388599 (E.D.N.Y. Nov. 2, 2020) .... 6

Peay v. Admin. For Children's Servs., No. 17 Civ. 4562, 2018 WL 2417848
    (S.D.N.Y. May 29, 2018) ........................................................................................... 14

People ex rel. Spitzer v. Sturm, Ruger & Co., Inc., 309 A.D.2d 91 (1st Dep't 2003) ............... 5, 6

Quinones v. N.Y. City, No. 19 Civ. 5400, 2020 WL 5665142 (S.D.N.Y. Aug. 17, 2020) ......... 16

Richard v. Fischer, 38 F. Supp. 3d 340 (W.D.N.Y. 2014) .............................................. 13

Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229 (S.D.N.Y. 2014) ......................................... 12

Ross v. Breslin, 693 F.3d 300 (2d Cir. 2012) ................................................................. 7

Sahu v. Union Carbide Corp., 528 F. App'x 96 (2d Cir. 2013) .......................................... 6

Scott v. City of Mt. Vernon, No. 14 Civ. 4441, 2017 WL 1194490 (S.D.N.Y. 2017) .................. 9

Shi v. N.Y. Dep't of State, 393 F. Supp. 3d 329 (S.D.N.Y. 2019) .............................................. 14

Soto v. Marist Coll., No. 17 Civ. 7976, 2019 WL 2371713 (S.D.N.Y. June 5, 2019) ................. 11

Strachn v. City of New York, No. 19 Civ. 10212, 2020 WL 6291428
    (S.D.N.Y. Oct. 27, 2020) ........................................................................................... 2

Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020) ...................................................... 2, 3

Weintraub v. Bd. of Educ., 593 F.3d 196 (2d Cir. 2010) ................................................ 8, 15

iii

Willard v. UP Fintech Hldg. Ltd., No. 19 Civ. 10326, 2021 WL 1026571
(S.D.N.Y. Mar. 17, 2021) ........................................................................................... 4

Zabar v. N.Y. City Dep't of Educ., No. 18 Civ. 6657, 2020 WL 2423450
(S.D.N.Y. May 12, 2020).................................................................................. 8, 15, 16

Zelnik v. Fashion Inst. Of Tech., 464 F.3d 217 (2d Cir. 2006) .................................... 12

**Statutes**

29 U.S.C. § 652 ............................................................................................................ 5

N.Y. Civil Serv. Law § 75-b ....................................................................................... 13

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................... 1, 3

Individual Rule 3(D)(ii) ............................................................................................. 16

Chief Judge DiFiore,[1] to the extent sued in her individual capacity, respectfully submits this reply memorandum of law in further support of her motion to dismiss the Complaint filed by Plaintiff Dennis W. Quirk, ECF No. 65, and in opposition to Plaintiff's motion to amend, ECF No. 72.

## PRELIMINARY STATEMENT

On one cause of action after another, Plaintiff refuses to set forth the legal basis of his claims, instead asking the Court to ignore Rule 8 based on a vague assurance that his claims may become viable after unspecified discovery or in a hypothetical amended pleading.  But each of Plaintiff's claims against Chief Judge DiFiore fails as a matter of law, and because a new pleading will not salvage Plaintiff's fatally flawed claims.  His papers demonstrate that his only ground for suing Chief Judge Difiore in her individual capacity is her position overseeing the New York State Courts, but he ignores the Second Circuit's recent ruling that supervisory liability is unavailable as a basis for a § 1983 claim.  The documents attached to Plaintiff's counsel's new factual declaration would not help his claims, either: they do not show any personal involvement by Chief Judge DiFiore in any constitutional violation, and in fact help negate any inference of causation in his core claim of First Amendment retaliation.  Moreover, any individual claim against Chief Judge DiFiore would fail because she is protected by qualified immunity.  Accordingly, Chief Judge DiFiore's motion to dismiss should be granted, and Plaintiff's last-minute motion to amend should be denied as futile and for failure to comply with the Court's Individual Rules.

---

[1]  For ease of reading, this reply memorandum of law uses the same defined terms as Chief Judge DiFiore's brief in support of her motion to dismiss, ECF No. 66.

1

## ARGUMENT

**I.      PLAINTIFF STILL FAILS TO ALLEGE PERSONAL INVOLVEMENT BY CHIEF JUDGE DIFIORE**

Plaintiff's opposition papers demonstrate that he has not alleged – and cannot allege – Chief Judge DiFiore's personal involvement in any challenged conduct, which is fatal to any individual-capacity claim against her.  See Strachn v. City of New York, No. 19 Civ. 10212, 2020 WL 6291428, at *2 (S.D.N.Y. Oct. 27, 2020) (Oetken, J.) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to [individual liability] under § 1983").  In her moving brief, Chief Judge DiFiore noted that the Complaint's only specific allegation regarding her conduct is that Plaintiff sent her a March 16, 2020 letter regarding issues with COVID-19 prevention.  DiFiore Br. at 7-9; cf. Brown v. Griffin, No. 18 Civ. 5439, 2019 WL 4688641, at *7 (S.D.N.Y. Sept. 25, 2019) ("The general rule is that if an official receives a letter . . . and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter.").  Outside of the single allegation regarding the letter – which Chief Judge DiFiore is not even alleged to have read, let alone taken any action on – the remaining references to her in the Complaint merely point out her status as chief executive of the New York State Unified Court System.  But Plaintiff cannot establish liability simply by pointing to Chief Judge DiFiore's position: "[i]nstead, a plaintiff must plead and prove 'that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (emphasis added) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).

Plaintiff's opposition makes clear that Chief Judge DiFiore's supervisory position is the

only basis he has for alleging her personal involvement.  His memorandum of law devotes one

paragraph and three sentences to the issue, writing that his claims "are properly stated against

Chief Judge DiFiore as the managerial representative of the employee-employer relationship and

as the person responsible for the overall operations of the New York State Courts."  Plaintiff's

First Memorandum of Law in Opposition to Motion to Dismiss Individual Claims Against Chief

Judge DiFiore, ECF No. 71 (the "Opp."), at 7-8.  Such an argument is no longer viable in the

wake of the Second Circuit's decision in Tangreti, which held that a plaintiff "cannot rely on a

separate test of liability specific to supervisors."  983 F.3d at 619.  Instead, Plaintiff was required

to allege that Chief Judge DiFiore violated the constitution "by [her] own conduct, not by reason

of [her] supervision of others who committed the violation."  Id.  Plaintiff has not done so, and

his papers demonstrate that he will not be able to.

## II.    PLAINTIFF'S COVID-RELATED CLAIMS FAIL

### A.    Plaintiff Still Cannot Provide a Legal Basis for His Claim of "Imminent and Substantial Endangerment"

Plaintiff has now filed four memoranda of law regarding his central claim of "imminent

and substantial endangerment," see ECF Nos. 16, 27, 70 & 71, and in none of them has he

pointed to any statute, regulation, common-law doctrine, or other provision that would provide

the Defendants with notice of the claim's legal basis.  Instead, his opposition brief consists of

nothing but conclusory statements such as "[t]he actions of the Defendants herein have jointly

and severally effected the physical safety of the Plaintiffs" and "Plaintiffs have articulated

'imminent and substantial endangerment' as related to COVID-19 through the course of this

litigation," Opp. at 8, none of which are supported by any citation to legal authority.  This is

patently insufficient to meet Plaintiff's pleading burden, as Federal Rule 8(a) requires every

plaintiff to "give the defendant fair notice of what the claim is and the grounds upon which it

3

rests."  Lombardo v. Dr. Seuss Enterprises, L.P., No. 16 Civ. 9974, 2017 WL 1378413, at *4 (S.D.N.Y. Apr. 7, 2017) (ellipsis omitted).  Chief Judge DiFiore is not required to infer the legal basis of Quirk's claim or to make his argument for him – nor would that be appropriate for the Court to do on his behalf.  "Plaintiff is, after all, not a pro se party whose submissions are to be 'construed liberally and interpreted to raise the strongest arguments that they suggest.'" Masciotta v. Clarkstown Cent. Sch. Dist., No. 14 Civ. 7128, 2016 WL 4449660, at *12 n.12 (S.D.N.Y. Aug. 23, 2016) (declining to consider causes of action not specifically raised by represented plaintiff).

Instead of taking this final opportunity to specify a legal basis for the "imminent and substantial endangerment" claim, Plaintiff chose to punt, saying that "[t]o the extent those allegations require further articulation within the Complaint, such issue can be addressed by way of an Amended Complaint," and that "they can also be addressed as part of the discovery process."  Opp. at 9.  This is a transparent gambit to extend the litigation (or engage in burdensome and unnecessary discovery) based on a claim that Plaintiff refuses to even articulate. There is no ground for the Court to permit it, particularly where Plaintiff cannot or will not demonstrate that amendment could result in a claim for which relief can be granted.  See Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002) (leave to amend may be denied "[w]here it appears that granting leave to amend is unlikely to be productive"); see, e.g., Willard v. UP Fintech Hldg. Ltd., No. 19 Civ. 10326, 2021 WL 1026571, at *9 (S.D.N.Y. Mar. 17, 2021) (denying leave to amend where "there is nothing to suggest that, if the Court were to grant leave to amend, Plaintiff[] would be able to state a valid claim.").

4

B.  <u>Plaintiff Does Not Dispute Dismissal of His OSHA Claim</u>

As to Plaintiff's OSHA claims, he does not dispute any of the four grounds for dismissal raised by Chief Judge DiFiore in her principal brief.  <u>See</u> DiFiore Br. at 11-12.  Indeed, Plaintiff admits that he "may not be entitled to enforce OSHA violations individually," Opp. at 9, but asks the Court to refer the matter to the Occupational Safety and Health Administration under the doctrine of primary jurisdiction.  However, any request for a referral would be futile because Chief Judge DiFiore is not subject to the agency's jurisdiction.  As discussed on page 11 of Chief Judge DiFiore's principal brief, an individual supervisor is not an "employer" subject to OSHA.  <u>See</u> 29 U.S.C. § 652(5).  Accordingly, there is no basis to refer Plaintiff's allegations to an agency that has no jurisdiction to adjudicate them.  <u>See Ellis v. Tribune Television Co.</u>, 443 F.3d 71, 89 (2d Cir. 2006) ("When an agency is barred by regulation or statute from ruling on a matter for whatever reason, we must respect the limitation on the agency's authority and will not apply the doctrine of primary jurisdiction.").

C.  <u>Plaintiff's Public Nuisance Claim Fails for Lack of Direct Involvement or Special Injury</u>

Plaintiff also fails to oppose Chief Judge DiFiore's arguments against his public nuisance claims.  In her principal memorandum of law, the Chief Judge argued (1) that Plaintiff had not specified an individual capacity claim against her, instead referring only to "the actions of the OCA," Compl. ¶ 53; (2) that a public nuisance claim under New York law must "involve specific harm directly attributable to [a] defendant or defendant's activity," which Plaintiff has not alleged regarding Chief Judge DiFiore, <u>People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.</u>, 309 A.D.2d 91, 98 n.2 (1st Dep't 2003) (collecting cases); and (3) that a public nuisance claim can lie "only if it is shown that the person suffered special injury beyond that suffered by the community

at large," <u>532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.</u>, 96 N.Y.2d 280, 292

(2001), and COVID-19 is not a special injury suffered by Plaintiffs, but rather a common threat

to New York, the nation, and the world.  <u>See</u> <u>Palmer v. Amazon.com, Inc.</u>, No. 20 Civ. 2468,

2020 WL 6388599, at *7 (E.D.N.Y. Nov. 2, 2020) (holding that public nuisance claim based on

COVID risk was not actionable because "[t]his injury is common to the New York City

community at large.").

Plaintiff does not dispute any of these arguments, instead contending that the public

nuisance argument "requires discovery to proceed to address the claims contained therein."[2]

Opp. at 12.  Plaintiff has it backwards: if his claim is legally insufficient on its face – as is the

case here – there is no right to discovery.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009)

(the Federal Rules "do[] not unlock discovery for a plaintiff armed with nothing more than

conclusions").  As explained in the Chief Judge's opening brief,  the Complaint does not state a

claim for public nuisance as a matter of law, <u>see</u> DiFiore Br. at 12-13, and Plaintiff has not

contradicted any of the arguments in question.  Accordingly, "[b]ecause [plaintiff]'s complaint is

deficient under Rule 8, he is not entitled to discovery."  <u>Iqbal</u>, 556 U.S. at 686.

## III.    PLAINTIFF'S EMPLOYMENT-LAW CLAIMS ARE LEGALLY INSUFFICIENT

### A.  <u>Plaintiff's First Amendment Retaliation Claim Fails</u>

1.  The Speech at Issue Was Not Protected Because Plaintiff Admits It Was Made
as Part of His Job Duties

---

[2]  Plaintiff makes much of the fact that one of the three cases cited on this point by Chief Judge DiFiore – <u>Sahu v. Union Carbide Corp.</u>, 528 F. App'x 96 (2d Cir. 2013), was decided on appeal of a summary judgment motion rather than a motion to dismiss.  However, <u>Sahu</u> was a secondary citation, offered with an <u>accord</u> signal after Chief Judge DiFiore's primary citation to <u>People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.</u>, 309 A.D.2d 91 (1st Dep't 2003), and demonstrates the Second Circuit's recognition that New York law requires "specific harm directly attributable to defendant or defendant's activity" in order to impose liability for public nuisance.  DiFiore Br. at 12.  Plaintiff does not acknowledge <u>Sturm, Ruger</u> – which affirmed the trial court's grant of a motion to dismiss – nor does he dispute its holding, or those of the other eleven cases cited for the proposition in the <u>Sturm, Ruger</u> opinion.  <u>See</u> 309 A.D.2d at 98 n.2.

Rather than counter Chief Judge DiFiore's arguments against his First Amendment retaliation claim, Plaintiff ignores his own allegations regarding the nature of speech at issue.  In her principal brief, Chief Judge DiFiore showed that the only relevant speech mentioned in the Complaint – Plaintiff's March 16, 2020 letter raising concerns about COVID safety – was of the type he was required to engage in as a New York State court officer, as demonstrated in the Court Officers Manual that governs officers' job duties.[3]  See DiFiore Br. at 14-18; cf. Ross v. Breslin, 693 F.3d 300, 306-08 (2d Cir. 2012) (speech owed existence to plaintiff's job duties where "reporting [] irregularities to a supervisor was one of her job duties," even though the report at issue "went outside the chain of command").  Plaintiff's opposition attempts to get around this problem by recontextualizing his speech, contending that he "did not speak as a court officer but rather as a Union President," and accusing the Defendants of "creating their own facts and attempting to insert them under a claim of truth."  Opp. at 16.  But the facts cited by the Chief Judge were taken directly from the Complaint, which characterized Plaintiff's speech as having been made "in his capacity as UNION President, and as a sworn New York State Court Officer," Compl. ¶ 14, and "[d]uring the course of Plaintiffs' employment with Defendant and as UNION President."  Id.  In other words, Plaintiff admitted in his Complaint that his speech was both part of his employment and part of his union activism.  Cf. Official Cmte. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (holding that allegations in a complaint "are judicial admissions by which [party] was bound throughout the course of the proceeding" (quotation omitted)).

Plaintiff cites extensively to the Second Circuit's 2018 decision in Montero v. City of Yonkers, 890 F.3d 386 (2d Cir. 2018), then writes that "Dennis Quirk did not speak as a court

---

[3] Plaintiff does not dispute that the Court Officers Manual is properly subject to judicial notice.

officer but rather as a Union President.  As such, his speech is protected pursuant to the First

Amendment."  Opp. at 15-16.  But Montero does not stand for the proposition Plaintiff wishes it

to; instead, the Montero Court "decline[d] to decide categorically that when a person speaks in

his capacity as a union member, he speaks as a private citizen," and limited its holding to "the

facts of this case as set out in the amended complaint."  890 F.3d at 399.  The Montero opinion

expanded on the Circuit's previous decision in Weintraub v. Bd. of Educ., 593 F.3d 196 (2d Cir.

2010), which held that union speech remains part of a public employee's official duties if "it was

part-and-parcel of his concerns about his ability to properly execute his duties."  Id. at 203;

Montero, 890 F.3d at 398; cf. Quirk Letter, Compl. Ex. 2 (complaining of "a severe shortage of

hand sanitizer" and other cleaning equipment, and that "the court buildings are not cleaned

properly").  The Montero Court wrote that "[t]he critical question . . . is whether the speech at

issue is itself ordinarily within the scope of an employee's duties," concluding that dismissal in

that case was not appropriate "[b]ecause, based on his pleading, Montero's remarks did not fall

within his employment responsibilities."[4]  Id. at 398.  Here, in contrast, Plaintiff has admitted

that his speech was made "as a sworn New York State Court Officer," and "[d]uring the course

of Plaintiffs' employment with Defendant."  Compl. ¶¶ 14, 17.  Moreover, reporting threats to

officer and public safety is a core duty of all New York State court officers.  See Court Officers

Manual §§ 1.20(12); 1.20(15); 2.30(A).

> ### 2.  Plaintiff Did Not Allege Adverse Action By Chief Judge DiFiore, and His New Documents Do Nothing to Salvage the Claim

---

[4]  The murky and case-specific nature of the case law regarding whether union speech is protected by the First Amendment also establishes that government officials like Chief Judge DiFiore must be protected by qualified immunity.  See Point V, infra; Zabar v. N.Y. City Dep't of Educ., No. 18 Civ. 6657, 2020 WL 2423450, at *9 (S.D.N.Y. May 12, 2020) (granting motion to dismiss based on qualified immunity because "[i]t is apparent that the application of Weintraub and Montero here would present [government] officials with very difficult issues.").

In her moving brief, Chief Judge DiFiore argued that any First Amendment retaliation claim must fail because "there is no specific allegation that Chief Judge DiFiore was involved in any retaliatory act."  Opp. at 18; see Greer v. Mehiel, 805 F. App'x 25, 28 (2d Cir. 2020) (summary order) ("It is well settled that . . . to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation.").  Plaintiff responds that this requirement is satisfied because a disciplinary proceeding against him is going forward "based upon Charges and Specifications levied against him by Judge DiFiore based upon the private email sent from Mr. Quirk, as Union President, to Judge DiFiore, as the managerial representative."  Opp. at 17.  This allegation about the "private email" appears nowhere in Plaintiff's Complaint, and cannot save Plaintiff from a motion to dismiss because "parties may not amend their pleadings through briefing."  Scott v. City of Mt. Vernon, No. 14 Civ. 4441, 2017 WL 1194490, at *28 (S.D.N.Y. 2017) (collecting cases).

Moreover, the allegation that the disciplinary proceedings stem from this later, "private email" still fails to state a claim for First Amendment retaliation, rendering amendment futile. The Charges and Specifications document is attached to a new reply declaration by Plaintiffs' counsel, see ECF No. 69 Ex. 1, but it does not support Plaintiff's assertion that the charges were "levied against [Plaintiff] by Judge DiFiore."  The charging document was signed not by Chief Judge DiFiore, but rather by George Silver, the Deputy Chief Administrative Judge, with assistance from OCA's counsel's office.  ECF No. 69-1 at 3.  Nor does any part of the document indicate that the Chief Judge played a role in the charging decision.  Any claim against Chief Judge DiFiore based on the charging document would therefore fail for the same reason the current claim fails: lack of personal involvement.

9

The allegation that the disciplinary proceedings were based on Plaintiff's second, "private email" also fatally undermines Plaintiff's core allegation of First Amendment retaliation. Plaintiff's June 12, 2020 "private email," which complains that he was depicted as racist in a *New York Post* article and contains an unfounded accusation of adultery against the Chief Judge, ECF No. 69-3, is manifestly not a "matter of public concern," as required to state a claim, since Plaintiff's complaints about his depiction in the *Post* and his personal allegations against the Chief Judge are "personal in nature and generally related to [his] own situation."  Huth v. Haslun, 598 F.3d 70, 74-75 (2d Cir. 2010); accord McHerron v. Burnt Hills – Ballston Lake Cent. Sch. Dist., 778 F. App'x 54, 55 (2d Cir. 2019) ("It is well established that speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation, or that is calculated to redress personal grievances – even if touching on a matter of general importance – does not qualify for First Amendment protections." (cleaned up)). Moreover, by bringing the June 2020 "private email" before the Court, Plaintiff negates any possible inference that the disciplinary charges against him resulted from his March 16, 2020 letter complaining about a shortage of sanitizing materials.  To the contrary: Plaintiff has alleged no direct evidence connecting the disciplinary proceedings with his complaints about COVID-19 safety, leaving temporal proximity as the only basis for an inference of causation.[5]

However, the June 12 email, with its threatening, crude, and unprofessional content, is an intervening event that "defeat[s] the inference of causation where temporal proximity might

---

[5]  The nearly five-month gap between Plaintiff's March 16, 2020 letter to Chief Judge DiFiore, Compl. Ex. 2, and the August 5, 2020 charging document attached to the reply declaration from Plaintiff's counsel, ECF No. 69-1, is too great in itself to support an inference of temporal causation.  "In the absence of additional facts plausibly connecting an adverse employment action to protected activity, a gap of just a few months has been held insufficient to infer a causal connection."  Soto, 2019 WL 2371713 at *11; accord Muhammad v. Juicy Couture/Liz Claiborne, Inc., No. 09 Civ. 8978, 2010 WL 4032735, at *6 (S.D.N.Y. July 30, 2010) ("many courts in this circuit have held that periods of two months or more defeat an inference of causation."), R&R adopted, 2010 WL 4006159 (S.D.N.Y. Oct. 12, 2010).

otherwise suffice to raise the inference." Brennan v. Legal Aid Soc'y, No. 19 Civ. 7756, 2020 WL 6875059, at *5 (S.D.N.Y. Nov. 23, 2020) (granting motion to dismiss where complaint showed intervening events that broke causal chain); Soto v. Marist Coll., No. 17 Civ. 7976, 2019 WL 2371713, at *11 (S.D.N.Y. June 5, 2019) (same); Jeanty v. Newburgh Beacon Bus Corp., No. 17 Civ. 9175, 2018 WL 6047832, at *9-10 (S.D.N.Y. Nov. 19, 2018) (same).  Accordingly, allowing Plaintiff to amend his complaint to bring in the Specification of Charges document and the June 12, 2020 "private email" would do nothing to salvage the claim of First Amendment retaliation – in fact, it would only weaken it further.  Any attempt to amend should accordingly be denied as futile.

### 3.   Plaintiff Has Not Alleged (And Cannot Allege) Any Injury

Lastly, as Chief Judge DiFiore argued in her principal brief, DiFiore Br. at 19-20, the First Amendment retaliation claim fails because Plaintiff cannot show any "actual, non-speculative chilling effect on his speech." A.F. ex rel. Fenton v. Kings Park Cent. Sch. Dist., 341 F. Supp. 3d 188, 200 (E.D.N.Y. 2018).  The Complaint maintains that Plaintiff "has consistently and vigorously objected" to the work conditions that were the subject of his complaints, Compl. ¶ 17, and emphasizes "Plaintiff Dennis W. Quirk's continuance in his unwavering lawful public objections to said public health or safety concerns." Id. ¶ 20.  Plaintiff's opposition does not dispute this, instead falling back on the same allegations that his claims must go forward because "Chief Judge DiFiore is responsible for the overall operations of the New York State [C]ourts and stands as the managerial representative in this employer-employee relationship." Opp. at 17. This response – in addition to emphasizing once again the lack of any substantive allegation of personal involvement – misses the point of the injury analysis in the First Amendment retaliation context: "[w]here a party can show no change in his behavior, he has quite plainly shown no

11

chilling of his First Amendment right to free speech."[6] <u>A.F.</u>, 341 F. Supp. 3d at 200 (quoting

<u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001)).

    B.  <u>Plaintiff Fails to Allege a § 1983 Conspiracy</u>

      Plaintiff's § 1983 conspiracy claim also fails as a matter of law.  Rather than engage with

the elements of the constitutional tort, Plaintiff's opposition spends the bulk of its argument on

irrelevant allegations that the State Courts' screening procedures violate the Dormant Commerce

Clause.[7]  Once Plaintiff finally turns to the claim itself, he explains that the conspiracy allegation

centers on "John Does 1-5, who would be identified after discovery proceeds, including

depositions."  Opp. at 20.  However, the Complaint fails to plausibly allege the existence of a

conspiracy involving the "Does," as its sole allegation about them is that they "[a]re individuals

at this time working at the direction of Defendant DiFiore pursuant to the incidents and

allegations contained herein."[8]  Compl. ¶ 7.  Missing here is any specific, substantive allegation

of a conspiracy, which requires a plaintiff to "allege facts that plausibly suggest a meeting of the

minds and provide some details of time and place."  <u>Ortiz v. Ledbetter</u>, No. 19 Civ. 2493, 2020

---

[6] There is an exception where public employees are not required to separately show the existence of an actual chilling effect, <u>see</u> <u>Zelnik v. Fashion Inst. Of Tech.</u>, 464 F.3d 217, 226 n.2 (2d Cir. 2006), but the loophole does Plaintiff no good.  If he spoke as a public employee, then his First Amendment retaliation claim fails because his complaints were related to his job duties.  <u>See</u> Point III(A)(1), <em>supra</em>.  On the other hand, if Plaintiff "did not speak as a court officer but rather as a Union President," as he now claims, Opp. at 15, then he was required to show that his speech was actually chilled, which he cannot do.  <u>See</u> Compl. ¶ 20 (discussing "Plaintiff Dennis W. Quirk's continuance in his unwavering lawful public objections to said public health or safety concerns.").

[7] This constitutional argument would be meritless even if it were properly pled.  Even assuming the dubious proposition that the State Courts' screening procedures affect interstate commerce, federal courts have repeatedly found State and local COVID-related restrictions not to offend the dormant commerce clause.  <u>See</u> <u>Hopkins Hawley LLC v. Cuomo</u>, No. 20 Civ. 10932, 2021 WL 465437, at *8 (S.D.N.Y. Feb. 9, 2021) (collecting cases).

[8] It is improper for a party to sue "John Doe" defendants with no substantive allegations about their identity or actions, as Plaintiff here has done.  "Although courts sometimes allow plaintiffs to plead causes of action against a 'John Doe' defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense."  <u>Ritchie v. N. Leasing Sys., Inc.</u>, 14 F. Supp. 3d 229, 237-38 (S.D.N.Y. 2014) (collecting cases).  This failure to carry his pleading burden would necessitate the dismissal of the claims against the Does even if Plaintiff could state a plausible claim for conspiracy – which he has not done.

WL 2614771, at *6 (S.D.N.Y. May 22, 2020).  With no allegations whatsoever about a meeting of the minds, the conspiracy claim must be dismissed.  Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) ("It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (quotation omitted)).

Moreover, Plaintiff did not respond in any way to the Chief Judge's argument that the § 1983 conspiracy claim would be barred by the intracorporate conspiracy doctrine, which "prohibits claims against employees of the same entity acting within the scope of their employment, because they are considered a single entity and are legally incapable of conspiring with each other." Nollah v. New York City, No. 17 Civ. 634, 2018 WL 4636847, at *4 (S.D.N.Y. Sept. 27, 2018) (Oetken, J.).  Notably, the only substantive conspiracy case cited in Plaintiff's brief, Richard v. Fischer, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014), was dismissed on this ground.  See id. at 354 ("Plaintiff's conspiracy claims against Defendants are barred by the intracorporate conspiracy doctrine, and are dismissed.").

### C.   Plaintiff Concedes His Labor Law § 740 Claim Is Legally Barred

Plaintiff's opposition "concede[s] New York Labor Law § 740 is not applicable to public employees" and abandons the claim, instead seeking leave to replead under New York Civil Service Law § 75-b.  However, as Chief Judge DiFiore noted in her moving brief, a claim under that statute would still fail as against her.  First, individual state officials do not come within the statute's definition of a "public employer." See N.Y. Civil Serv. Law § 75-b(1)(a) (defining "public employer" as the State, political subdivisions, and other agencies and authorities, but not individuals).  Second, "Section 75-b does not apply to employees who are covered by a collective bargaining agreement with a specified grievance procedure." Peay v. Admin. For

13

Children's Servs., No. 17 Civ. 4562, 2018 WL 2417848, at *3 (S.D.N.Y. May 29, 2018) (citing

Morales v. City of N.Y., No. 14 Civ. 7253, 2017 WL 4277174, at *4 (S.D.N.Y. Sept. 25, 2017)).

Plaintiff's union contract contains such a procedure.  See Collective Bargaining Agreement,

Thompson Dec. Ex. 1 at 53 *et seq.*

## IV.     THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION

Plaintiff does not dispute that in the event that his federal claims for OSHA violations,

First Amendment retaliation, and § 1983 conspiracy are dismissed, the Court should also decline

supplemental jurisdiction over his state-law claims.  See DiFiore Br. at 12 n.4; Shi v. N.Y. Dep't

of State, 393 F. Supp. 3d 329, 343 (S.D.N.Y. 2019) ("In the usual case in which all federal-law

claims are eliminated before trial, the balance of factors will point toward declining to exercise

jurisdiction over the remaining state-law claims.").

## V.     CHIEF JUDGE DIFIORE IS PROTECTED BY QUALIFIED IMMUNITY

As Chief Judge DiFiore demonstrated in her moving brief, DiFiore Br. at 24-26,

Plaintiff's claims as against her individually are barred by qualified immunity, which "protects

government officials from suit if their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Gonzalez v. City of

Schenectady, 728 F.3d 149, 154 (2d Cir. 2013); see also Bacon v. Phelps, 961 F.3d 533, 545 (2d

Cir. 2020) ("To be clearly established, a right must be sufficiently clear that every reasonable

official would have understood that what [s]he is doing violates that right. In other words,

existing precedent must have placed the statutory or constitutional question beyond debate.").

Plaintiff's opposition disputes this conclusion only as to one of his claims: for First

Amendment retaliation.  See Opp. at 22 (alleging that "[i]t cannot be disputed that Plaintiffs have

a First Amendment right to free speech and free association" and that "as a result of his exercise

of free speech . . . Mr. Quirk is presently being subjected to a disciplinary proceeding").  But the

First Amendment retaliation claim is precisely the one to which qualified immunity attaches

most strongly: as noted in the Chief Judge's moving brief, DiFiore Br. at 25, federal courts in

this District have granted qualified immunity to individual defendants in cases such as this one

involving union speech by public employees, finding that the law governing the area is far from

clearly established.[9]  See Zabar v. N.Y. City Dep't of Educ., No. 18 Civ. 6657, 2020 WL

2423450, at *8 (S.D.N.Y. May 12, 2020) (noting that "[s]peech by public employee union

members concerning union activities and work-related matters presents difficult issues in the

context of Section 1983 First Amendment retaliation claims" and "conclud[ing] that the law in

this area was not clearly established."); see also Chidume v. Greenburgh-N. Castle Union Free

Sch. Dist., No. 18 Civ. 1790, 2020 WL 2131771, at *10 (S.D.N.Y. May 4, 2020) ("It was thus

not clearly established whether Plaintiff's union advocacy . . . was protected under the First

Amendment, and the individual defendants . . . are therefore entitled to qualified immunity on

this claim.").

Plaintiff also argues – again without citing any legal authority – that any motion to

dismiss based on qualified immunity is "premature" because "[q]ualified [i]mmunity is fact

sensitive and requires discovery to proceed and be completed."  Opp. at 22.  That is not the law:

---

[9]  The Second Circuit's 2018 opinion in Montero v. City of New York, cited extensively in Plaintiff's brief – though not in his discussion of qualified immunity, Opp. at 22 – does little to make the law clearer from the perspective of a public official.  In Montero, the appellate court concluded that a union vice-president's criticism of the union president was actionable under the First Amendment because "his union remarks cannot be considered 'part-and-parcel of his concerns about his ability to properly execute his duties.'"  890 F.3d 386 (quoting Weintraub, 593 F.3d at 203).  In addition to being factually distinguishable from this case, the Montero opinion did not enumerate a clear rule for officials to follow; instead, the Court "decline[d] to decide categorically that when a person speaks in his capacity as a union member, he speaks as a private citizen," but instead "conclude[d] that, under the facts of this case as set out in the amended complaint, when Montero spoke in his capacity as a union member, he spoke as a private citizen."  Id. at 399.  The analysis of whether the First Amendment covers a given act of union speech by a public employee remains murky and case-specific, leading Judge Gardephe to conclude in Zabar that qualified immunity was warranted because "[i]t is apparent that the application of Weintraub and Montero here would present [government] officials with very difficult issues."  Zabar, 2020 WL 2423450 at *9.

instead, it is well-established that qualified immunity "may be established at the motion-to-dismiss stage if it is 'based on facts appearing on the face of the complaint.'" Quinones v. N.Y. City, No. 19 Civ. 5400, 2020 WL 5665142, at *15 (S.D.N.Y. Aug. 17, 2020) (quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)), R&R adopted, 2020 WL 6901340 (S.D.N.Y. Nov. 23, 2020).  Here, the Complaint makes clear that Plaintiff made his speech both "in his capacity as Union President, and as a sworn New York State Court Officer," Compl. ¶ 14; see also id. ¶ 17 (alleging speech "[d]uring the course of Plaintiff's employment with Defendant and as UNION president"), in other words, made *both* his union capacity and in his capacity as an employee.  This puts him into the same legal gray area discussed in Zabar and Chidume – two qualified immunity cases decided on Rule 12(b)(6) motions to dismiss.  See Zabar, 2020 WL 2423450 at *1; Chidume, 2020 WL 2131771 at *1.

## VI.    LEAVE TO AMEND SHOULD BE DENIED

The Court should deny leave to amend as both procedurally improper and substantively futile.  As a threshold matter, Plaintiff has violated the Court's Individual Rules, which require that "[i]f a motion to dismiss is filed, the non-moving party shall, within 10 days of receipt of the motion, notify the Court and its adversary in writing whether (1) it intends to file an amended pleading and when it will do so, or (2) it will rely on the pleading being attacked. Non-moving parties are on notice that declining to amend their pleadings to respond to a fully briefed argument in the motion to dismiss may well constitute a waiver of their right to use the amendment process to cure any defects that have been made apparent by the briefing." Individual Rule 3(D)(ii) (citing Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 7797 F.3d 160, 290 (2d Cir. 2015)).  Plaintiff did not so notify the Defendants or the Court, and has instead chosen to oppose the motions to dismiss, ECF Nos. 70 & 71, while also seeking

amendment in case he loses.  ECF No. 72.  This failure to follow the Court's required procedure

is reason enough in itself to deny leave to amend.  See, e.g., In re Michael Stapleton Associates

Ltd., No. 17 Civ. 5468, 2018 WL 3962931, at *4 (S.D.N.Y. Aug. 17, 2018) (finding that

"Plaintiffs have waived their right to amend" by not following Judge Nathan's individual rule on

amendment, which is virtually identical to the Court's).

    Leave to amend should also be denied as futile, as Plaintiff's opposition brief shows that

his proposed amendment cannot save a Complaint that fails as a matter of law.  See Jackson v.

Abernathy, 960 F.3d 94, 99 (2d Cir. 2020) (affirming denial of leave to amend where the

"proposed amended complaint would be futile").[10]  Plaintiff has no basis to allege personal

involvement by Chief Judge DiFiore in any violation, other than "as the managerial

representative of the employee-employer relationship and as the person responsible for the

overall operations of the New York State Courts," Opp. at 7-8, which cannot, as a matter of law,

provide a basis for his claims.  See Point I, *supra*.  There is no basis to believe that amendment

will render Plaintiff's COVID-related claims viable, as he cannot articulate a legal basis for his

central claim of "imminent and substantial endangerment," he cannot proceed against an

individual State employee under OSHA, and he cannot allege either Chief Judge DiFiore's direct

involvement in a public nuisance or any special injury necessary to support a public nuisance

claim.  See Point II, *supra*.  Plaintiff's March 16, 2020 letter to Chief Judge DiFiore cannot serve

as the basis of a First Amendment retaliation claim because the speech was made "as a sworn

---

[10]  Plaintiff's motion to amend is also procedurally improper because he did not submit a proposed amended
complaint along with it.  See Capak v. Epps, No. 18 Civ. 4325, 2020 WL 2543092, at *4 (S.D.N.Y. Apr. 7, 2020)
(amendment "must be denied for the separate reason that [plaintiff] failed to provide the Court with a proposed
amended pleading setting forth the claims he wishes to assert"), R&R adopted, 2020 WL 2538998, at *1 (S.D.N.Y.
May 19, 2020); see also Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 233 F.R.D. 327, 329
(S.D.N.Y. 2005) (leave to amend "would have to be denied" where plaintiff did not submit proposed amended
complaint, because amendment motion "sought a ruling from the Court on a hypothetical amended complaint that
neither the Court nor defendants had seen.").

New York State Court Officer," Compl. ¶ 14, and because Plaintiff cannot show Chief Judge DiFiore's involvement in an adverse action or any actual chilling of his speech.  <u>See</u> Point III(A)(1), *supra*.  Allowing amendment just to put before the Court the Charges and Specifications document and Plaintiff's June 12, 2020 "private email" would do nothing to salvage the claim, since the charging document does not indicate any personal involvement by Chief Judge DiFiore and the "private email," with its personal and unprofessional content, is an intervening event that negates any inference of causation based on temporal proximity.  <u>See</u> Point III(A)(2), *supra*. Plaintiff's remaining employment-law claims fail because his § 1983 claim fails to allege a meeting of the minds and is barred by the intracorporate conspiracy doctrine, while his proposed new claim under Civil Service Law § 75-b fails since the statute does not allow lawsuits against individual supervisors and is not applicable to employees whose collective bargaining agreement includes a grievance procedure.  <u>See</u> Point III(B-C), *supra*. Lastly, any amendment would be futile as against Chief Judge DiFiore because she is protected by qualified immunity.  <u>See</u> Point V, *supra*.  Chief Judge DiFiore's motion to dismiss should be granted, and Plaintiff's belated motion to amend should be denied.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For the reasons set forth above, and in her moving papers, Chief Judge DiFiore respectfully requests that the Court dismiss the Complaint as against her in its entirety and with prejudice, deny Plaintiff's motion to amend, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
       May 14, 2021

       LETITIA JAMES
       Attorney General
       State of New York

By:

       James M. Thompson
       Assistant Attorney General
       28 Liberty Street
       New York, NY  10005
       (212) 416-6556
       james.thompson@ag.ny.gov

*Attorney for Chief Judge DiFiore in her individual capacity*

19