UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS W. QUIRK, as president of and
on behalf of the New York State Court
Officers Association,
                              Plaintiff,

                  -v-

HONORABLE JANET DIFIORE, Chief
Judge of the State of New York, *et al.*,
                              Defendants.

20-CV-5027 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Dennis Quirk, president of the New York State Court Officers Association ("NYSCOA"), brings this action individually and on behalf of the NYSCOA, alleging deprivation of his First and Fourteenth Amendment rights to free speech and free association, conspiracy to deprive him of his constitutional rights under 42 U.S.C. § 1983, violations of the Occupational Safety and Health Act ("OSHA"), "imminent and substantial endangerment," and violations of New York's whistleblower statute and common law of public nuisance. These claims all stem from the alleged failure of Defendant Office of Court Administration ("OCA") to implement protocols within New York state courthouses to adequately address health and safety concerns relating to COVID-19. Quirk claims that Defendants retaliated against him for his speech advocating improved COVID-19 protocols with threats of disciplinary measures and termination. Defendant Chief Judge DiFiore and Defendant OCA move to dismiss the complaint for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction, respectively. For the reasons that follow, both motions are granted.

1

I.     **Background**

The following facts are drawn from the complaint and assumed true for the purposes of this motion.  (*See* Dkt. No. 2 ("Compl.").)

Quirk is a New York State court officer and the president of the NYSCOA, a labor union representing approximately 1,500 court officers throughout the state.  (Compl. ¶¶ 3–4.)  The Honorable Janet DiFiore is the Chief Judge of the State of New York and the head of the OCA. The OCA, which is the executive branch of the state court system, is responsible for promulgating rules that protect the state judiciary and its employees, including creating policies to address safety measures related to the spread of COVID-19.  (Compl. ¶ 7.)  Defendants "John Does 1–5" are individuals who worked under the direction of Chief Judge DiFiore during the incidents described in Quirk's complaint.  (*Id.*)

Since the start of the COVID-19 pandemic, Quirk has "consistently and vigorously objected to the lack of PPE [(personal protective equipment)] and properly sterilized work areas for UNION members."  (Compl. ¶ 17.)  Because of Defendants' failure to provide PPE to NYSCOA members and properly sterilize work areas within state courthouses, court officers allegedly have been, and continue to be, exposed to COVID-19.  (Compl. ¶ 18.)  On information and belief, Quirk submits that at least three members of the NYSCOA passed away after contracting COVID-19.  (Compl. ¶ 18 n.1.)  Quirk wrote a letter to Chief Judge DiFiore about his concerns with the OCA's COVID-19 protocols on March 12, 2020.  (Compl. ¶ 24.) Additionally, before the start of the pandemic, Quirk submitted requests pursuant to the New York Freedom of Information Law ("FOIL"), seeking production of documents regarding the OCA's budget.  Defendants have never responded to Quirk's FOIL requests.  (Compl. ¶¶ 13, 15, 16.)

Because of Quirk's consistent objections about the OCA's COVID-19 protocols, his letter to Chief Judge DiFiore, and his previous FOIL requests, Defendants retaliated against him. Quirk was "threatened with disciplinary action by Defendants, including an interrogation, threat of suspension and possible termination from employment." (Compl. ¶ 22.)

Quirk filed his complaint against Defendants in July 2020, alleging deprivation of his First and Fourteenth Amendment rights to free speech and free association, conspiracy to deprive him of his constitutional rights under 42 U.S.C. § 1983, violations of OSHA, "imminent and substantial endangerment," and violations of New York's whistleblower statute and common law of public nuisance. (*See* Compl.)  The OCA, on its own behalf and on Chief Judge DiFiore's behalf to the extent that she is being sued in her official capacity, moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction because of Eleventh Amendment sovereign immunity. (Dkt. No. 63.)  Chief Judge DiFiore, in her individual capacity, also moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because she asserts that Quirk's claims all fail as a matter of law. (Dkt. No. 65.)

## II.    Legal Standard

Rule 12(b)(1) requires that a claim be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States,* 319 F.3d 550, 554 (2d Cir. 2003).  "In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 (2d Cir. 2001).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.   Claims Against OCA and Chief Judge DiFiore in her Official Capacity

OCA asserts that the Court lacks subject matter jurisdiction over Plaintiff's claims because the Eleventh Amendment bars suits by private parties against a state or its agencies in federal court. OCA further contends that neither of the two exceptions to Eleventh Amendment immunity — a state's unambiguous consent to a lawsuit and a valid and unambiguous abrogation of sovereign immunity by Congress — is present here. (*See* Dkt. No. 68 at 7.) Eleventh Amendment immunity, if applicable here, would preclude all of Quirk's claims regardless of whether the sought-after relief is monetary or injunctive. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) (citing *Cory v. White*, 457 U.S. 85, 91 (1982)).

The Court agrees with OCA that it does not have subject matter jurisdiction over Quirk's claims against OCA. "The Second Circuit has recognized the New York State Unified Court System, of which OCA is the administrative arm, as a state instrumentality protected by Eleventh Amendment sovereign immunity." *Pietri v. N.Y.S. Off. Of Ct. Admin.*, 936 F. Supp. 2d 120, 127

(E.D.N.Y. 2013) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 367–68 (2d Cir. 2009)).  Quirk does not contest that OCA is entitled to Eleventh Amendment sovereign immunity, nor does Quirk point to any abrogation of OCA's sovereign immunity by Congress.  Quirk argues only that OCA has waived its sovereign immunity by actively participating in this litigation and not previously raising this Eleventh Amendment argument.

But the cases Quirk cites, *Gunter v. Atlantic Coast Line Railroad Co.*, 200 U.S. 273, 284 (1906), and *Bergemann v. Rhode Island Department of Environmental Management*, 665 F.3d 336 (1d Cir. 2011), are inapposite.  Both of these cases stand for the proposition that a state waives its Eleventh Amendment sovereign immunity when it voluntarily becomes a party to a suit *and* submits its rights for judicial determination.  *See Gunter*, 200 U.S. at 284; *Bergemann*, 665 F.3d at 340.  In contrast, OCA has only defended itself against OCA's claims here.  *See NRA of Am. v. Cuomo*, 525 F. Supp. 3d 382, 407 (N.D.N.Y. 2021) ("New York has not unequivocally expressed waiver of immunity, nor has it waived this immunity simply by defending the claims against it. To hold otherwise would mean a waiver of sovereign immunity occurs every time a State appears in federal court to defend itself in litigation. Such a result is not supported by either case law or logic.")  Further, a federal court's subject matter jurisdiction may be raised by a party or by the court at any stage of the litigation.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Because the Court lacks subject matter jurisdiction, it refrains from addressing the merits of Quirk's claims against the OCA.

The Court also refrains from addressing the merits of Quirk's claims against Chief Judge DiFiore in her official capacity.  The Eleventh Amendment bars Quirk's claims seeking money damages, *see Pietri*, 936 F. Supp. at 128, and the Court abstains from exercising jurisdiction over Quirk's claims seeking injunctive relief against Chief Judge DiFiore in light of *O'Shea v.*

*Littleton*, 414 U.S. 488 (1974), *see Quirk v. DiFiore*, No. 20 Civ. 5027, 2020 WL 7260533, at

*3–4 (S.D.N.Y. Dec. 10, 2020) ("Given the strong state interests at stake, as well as the intrusive

nature of the requested relief, the Court finds abstention proper under *O'Shea*.").

## IV.   Claims Against Chief Judge DiFiore in her Individual Capacity

Quirk's complaint does not specify whether he brings this action against Chief Judge

DiFiore in her individual capacity, official capacity, or both.  In his briefing, Quirk states that he

is suing Chief Judge DiFiore in both capacities, and Chief Judge DiFiore has moved to dismiss

the complaint in both capacities.  So, the Court now considers Quirk's claims against Chief

Judge DiFiore in her individual capacity.

### A.   First Amendment Retaliation

Quirk alleges that Chief Judge DiFiore retaliated against him after he repeatedly objected

about the insufficiency of the OCA's COVID-19 prevention policies.  Quirk claims that he has

"been threatened with disciplinary action by Defendants, including an interrogation, threat of

suspension and possible termination from employment" (Compl. ¶ 22), and that one of the

defendants — Quirk does not specify — "engag[ed] in acts of intimidation upon UNION

activities, particularly the action of UNION President Quirk" (Compl. ¶ 21(d)).  Defendants'

actions, according to Quirk, deprived him of his First Amendment rights to speech and free

association.  (*See* Compl. ¶ 32.)

As a threshold matter, this claim fails against Chief Judge DiFiore because Quirk fails to

allege her personal involvement in the challenged conduct.  *See Shomo v. City of New York*, 579

F.3d 176, 184 (2d Cir. 2009) ("It is well settled in this Circuit that personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under

§ 1983." (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995))).  Pleading supervisory

liability is insufficient.  "Instead, a plaintiff must plead and prove 'that each Government-official

defendant, through the official's own individual actions, has violated the Constitution.'"

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Nowhere in the complaint does Quirk allege any actions that Chief Judge DiFiore personally

undertook to retaliate against Quirk for objecting to COVID-19 policies.  In fact, besides

identifying Chief Judge DiFiore and describing her responsibilities as the head of the OCA, the

complaint mentions Chief Judge DiFiore only once:  Quirk alleges that, on March 16, 2020, he

wrote to Chief Judge DiFiore about a severe shortage of protective equipment and that court

buildings were not being properly cleaned.  (Compl. ¶ 24.)  Yet Quirk does not allege that Chief

Judge DiFiore read this letter, let alone that Chief Judge DiFiore took any actions — retaliatory

or otherwise — after reading it.  *Cf. McCrary v. Marks*, 836 F. App'x 73, 74 (2d Cir. Feb. 12,

2021) (explaining that where "the most [plaintiff] alleged is that [defendant] received his letter

and directed someone at the [agency] to respond to it[, t]hat is clearly not enough to state a

claim"). This claim thus fails as a matter of law.

      **B.**    **Section 1983 Conspiracy**

      Quirk also alleges that there was a conspiracy among Defendants to deprive him of his

First Amendment rights.  The same alleged facts underlying his First Amendment retaliation

claim underlie this claim as well.  (*See* Compl. ¶¶ 35–36 ("As part of the conspiracy, the

Defendants did, without cause or justification, among other acts, subject Plaintiff Dennis W.

Quirk to a disciplinary interrogation, threaten him with suspension and possible termination of

employment in an effort to deny his individual right of free speech.").)

      Quirk's § 1983 conspiracy claim fails for several reasons.  To state a claim for a § 1983

conspiracy, a plaintiff must allege "(1) an agreement between a state actor and a private party;

(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance

of that goal causing damages."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir.

2002).  The conspiracy claim falters on the first element. The named Defendants are all state actors and Quirk does not allege the involvement of any private parties in this alleged conspiracy.  Quirk, in his brief, asserts that the "John Does 1–5" defendants are involved in the conspiracy.  (*See* Dkt. No. 71 at 20.)  But the complaint contains only one allegation about the "John Does" — that they are individuals working under the direction of Chief Judge DiFiore. (*See* Compl. ¶ 7.)  The complaint does not state that these "John Does" are private parties, much less that they were involved in a conspiracy.  Moreover, nothing pleaded in the complaint plausibly suggests a meeting of the minds among the members of this conspiracy, or that Judge DiFiore was even a member of this conspiracy.  *See Ortiz v. Ledbetter*, No. 19 Civ. 2493, 2020 WL 2614771, at *6 (S.D.N.Y. May 22, 2020) ("A plaintiff must allege facts that plausibly suggest a meeting of the minds and provide some details of time and place.").  Besides the conclusory allegation that Defendants "conspired with one another to deprive Plaintiffs of their constitutional rights" (Compl. ¶ 35), the complaint provides no specifics regarding any meeting of the minds.  *See id.* ("The conclusory allegation that Defendants 'agreed to act in concert' is insufficient to state a claim where it is not supported by additional factual allegations describing the alleged conspiracy." (internal quotation marks and citation omitted)).  Lastly, since the only named defendants are Chief Judge DiFiore and the Office of Court Administration, the intracorporate conspiracy doctrine bars this claim.  Under this doctrine, officers and employees of a single corporate entity are "legally incapable of conspiring together."  *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir.2008) (internal quotation marks omitted).  The Court thus dismisses this claim as well.

### C.    OSHA Violations

The last of Quirk's federal law claims are for violations of OSHA regulations (*see* Compl. ¶¶ 46–51); these claims all fail because Quirk cannot bring a lawsuit under OSHA.[1]  *See Donovan v. Occupational Safety & Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) ("Under OSHA, employees do not have a private right of action."); *see also Jacobsen v. N.Y. City Health & Hosps. Corp.*, No. 12 Civ. 7460, 2013 WL 4565037, at *7 (S.D.N.Y. Aug. 28, 2013) (collecting cases and noting that the "statutory scheme [of OSHA] envisions that the public rights created by the Act are to be protected by the Secretary [of Labor] and that enforcement of the Act is the sole responsibility of the Secretary").

### D.    "Imminent and Substantial Endangerment"

Quirk also brings a claim for "imminent and substantial endangerment."  (*See* Compl. ¶¶ 38–40.)   But Quirk does not provide a legal source for this claim in his complaint or brief. There is thus "no meaningful basis for the Court to assess the sufficiency of [Quirk's] claim[]." *Cannon v. NYS Comm'r of Soc. Servs.*, No. 19 Civ. 6493, 2019 WL 3743975, at *2 (S.D.N.Y. Aug. 7, 2019) (internal quotation marks omitted).  Further, since Quirk is not a *pro se* party, the Court is not obligated to infer the legal basis of this "imminent and substantial endangerment" claim or interpret it to raise the strongest possible legal argument.  *See Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14 Civ. 7128, 2016 WL 4449660, at *12 n.12 (S.D.N.Y. Aug. 23, 2016) (citing *Treistman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  Because Quirk

---

[1] Quirk acknowledges that he "may not be entitled to enforce OSHA violations individually" (Dkt. No. 71 at 9) and instead asks the Court to refer the matter to OSHA.  The Court declines to do so.  Chief Judge DiFiore is not an "employer" subject to OSHA.  *See* 29 U.S.C. § 652(5); *United States v. Shear*, 962 F.2d 488, 492 (5th Cir. 1992) (noting that OSHA actions against individual supervisors "may not be sustained on the theory that [the supervisor] was an employer").

has not given "fair notice of what [this] claim is and the grounds upon which it rests," *Lombardo v. Dr. Seuss Enters., L.P.*, No. 16 Civ. 9974, 2017 WL 1378413, at *4 (S.D.N.Y. Apr. 7, 2017) (cleaned up), the Court dismisses it.

### E.     Quirk's Remaining State-Law Claims

Because none of Quirk's constitutional and other federal claims survive, the Court declines to exercise supplemental jurisdiction over Quirk's remaining state-law claims. *See Shi v. N.Y. Dep't of State*, 393 F. Supp. 3d 329, 343 (S.D.N.Y. 2019) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Kolkari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  These claims are thus dismissed without prejudice.

## V.     Quirk's Motion to Amend the Complaint

Quirk cross-moves to amend his complaint in the event that the Court dismisses this action upon the pleadings.  Quirk asserts that his complaint puts forth viable claims, notes the early stage of the litigation, and relies on the general proposition that courts should freely give leave to amend under Federal Rule of Civil Procedure 15(a)(2). *See Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).  If allowed to amend, Quirk seeks to: specify that he is suing Chief Judge DiFiore in her official and individual capacity, clarify his imminent and substantial harm allegations, add a whistleblower claim, and add additional allegations to his public nuisance claim. (*See* Dkt. No. 70 at 16–17, 22.)

Though courts should generally freely give leave to amend when justice requires, this Court denies Quirk leave to amend his complaint as futile. *See Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (affirming denial of leave to amend where the "proposed amended complaint would be futile").  None of his proposed amendments would overcome OCA's and

Chief Judge DiFiore's Eleventh Amendment sovereign immunity and allow this Court to

exercise subject matter jurisdiction.  And Quirk's proposed amendments provide no additional

detail about Chief Judge DiFiore's personal involvement in any violation of law, dooming any

suit against her in her individual capacity.  Further, Quirk failed to follow the Court's Individual

Rules of notifying the Court and Defendants within ten days of receiving Defendants' motion to

dismiss of his intent to file an amended pleading, an additional and independent ground for

denying his motion to amend.  *See* Individual Rule 3(D)(ii) (citing *Lorely Fin. (Jersey) No. 3 Ltd.*

*v. Wells Fargo Sec., LLC*, 797 F.3d 160, 290 (2d Cir. 2015)).

## VI.   Conclusion

For the foregoing reasons, Chief Judge DiFiore's and OCA's motions to dismiss are

GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 63, 65, and 72 and

to close the case.

SO ORDERED.

Dated: January 28, 2022
       New York, New York

J. PAUL OETKEN
United States District Judge